IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| NATE SWINT | NO. 94-276 |

DuBOIS, J.                                                                                                          March 31, 2021

**M E M O R A N D U M**

### I.    INTRODUCTION

Defendant, Nate Swint, is serving two concurrent mandatory life sentences at United States Penitentiary, Allenwood in Allenwood, Pennsylvania ("USP Allenwood"). Presently before the Court is defendant's *pro se* Letter/Motion Pursuant to the First Step Act of 2018, amended by his counseled Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and other supplements[1] (collectively, his "Motion for Compassionate Release"). For the reasons that follow, defendant's Motion for Compassionate Release is granted. His sentence is reduced to time served, approximately twenty-seven years.

### II.   BACKGROUND

On February 24, 1996, following a jury trial, defendant was convicted of one count of conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. § 846 (Count One); two counts of possession of cocaine and heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Three); and one count of attempt to possess with intent to distribute

---

[1] In addition to the *Pro Se* Motion and Counseled Motion, defendant also filed a Motion for Expedited Consideration of this Supplemental Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for Immediate Release as a Result of Being [at] a High-Risk COVID-19 and to Prevent a Manifest Injustice, Defendant's Reply to Government's Response to Request for Compassionate Release, Pursuant to 18 U.S.C. § 3582(c)(1)(A), a Motion to Expedite Consideration of Movant's 18 U.S.C. § 3582(c)([1])(A)(i) Motion Where Movant "Is" Now in "Imminent" Danger, a counseled Reply to Government's Supplemental Responses, and in Further Support of Motion for Reduction in Sentence, and a Notice of New Authority. The Court also considers these filings.

cocaine in violation of 21 U.S.C. § 846 (Count Four).  The convictions stemmed from defendant's involvement with FBI Agent Kenneth Withers, who stole "massive quantities" of drugs from the FBI's evidence control room and sold a portion of them to defendant. Gov't's Resp., 2.

The Sentencing Guidelines range of imprisonment for defendant's convictions was 210 to 262 months.  Counseled Mot., 12 (citing Presentence Report ¶ 94).  However, 21 U.S.C. § 841(b)(1)(A) mandated life sentences on Counts Two and Four because defendant had two prior drug trafficking convictions.  Accordingly, on September 20, 1996, the Court imposed the mandatory life sentences on Counts Two and Four, to run concurrently, and terms of imprisonment of 250 months on Counts One and Three, to run concurrently with each other and with the life sentences.

Defendant has been in federal custody since June 5, 1994.  Counseled Reply, 4.  He has thus served nearly twenty-seven years in prison.  In that time, defendant has received seven disciplinary infractions, most of which were minor.  Gov't's Resp., 4-5; Counseled Mot., 12.  Defendant's most serious disciplinary infraction, "possessing a dangerous weapon," occurred over seven years ago.[2]  Gov't's Resp., 4-5; Counseled Mot., 12.  He has not received any disciplinary infractions since then.

On March 23, 2020, amid the global COVID-19 pandemic, defendant submitted a request for compassionate release to the Warden of USP-Allenwood.  *Pro Se* Motion Ex. A.  The request was denied on April 2, 2020.  On May 29, 2020, defendant filed his *pro se* Letter/Motion Pursuant to the First Step Act of 2018, and on February 16, 2021, the Federal Community Defender Office filed the counseled Motion to Reduce Sentence Pursuant to 18 U.S.C.

---

[2] The Government reports this infraction occurred in 2013; defendant reports this infraction occurred in January 2014.  *See* Gov't's Resp., 4-5; Counseled Mot. 12.

2

§ 3582(c)(1)(A)(i). Defendant subsequently retained private counsel, who filed the counseled Reply to Government's Supplemental Responses, and in Further Support of Motion for Reduction of Sentence ("Counseled Reply") on March 21, 2021.

Defendant argues that three extraordinary and compelling circumstances justify his release. First, he argues that his mandatory life sentences are excessive and disproportionate to his crimes. Counseled Reply, 2. Second, he argues that his age, time served, and declining health are extraordinary and compelling circumstances. Counseled Reply, 2. Specifically, defendant, who is seventy years old, states he suffers from hypertension, hypertensive retinopathy, hyperlipidemia, prediabetes, lower back pain, an enlarged prostate, arthritis, a history of knee replacement surgery, and kyphosis. Counseled Mot., 1, 8. The Government reports that defendant also suffers from anemia, dermatitis/eczema, edema, esophageal reflux, shoulder pain, spinal stenosis, vitamin D deficiency, and neuralgia/neuritis. Gov't's Resp., 6. Due to defendant's lower back pain and arthritis, the BOP ordered that he be designated to the lower bunk in his cell. Counseled Mot., 8. The BOP also issued defendant a shower chair, cane, and walker. *Id.* Additionally, defendant has a history of smoking and a body mass index ("BMI") of 28.4, meaning he is overweight. Document No. 602 ("Med. Rec."), 1. Defendant's third, and related, argument in support of his Motion for Compassionate Release is that these health conditions put him at an increased risk of suffering severe consequences from contracting COVID-19.

The Government responded on July 10, 2020 and filed Supplemental Responses on March 10, 2021 ("First Supp.") and March 18, 2021 ("Second Supp."). The Motion is thus ripe for decision.

### III. Applicable Law

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with the prison warden.[3]  18 U.S.C. § 3582(c)(1)(A)(i). Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common" and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401. (E.D. Pa. 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)). "Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), were previously defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cites the (A) medical conditions, (B) age, and (C) family circumstances of the defendant and (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the BOP. U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). While courts have concluded that this policy statement is no longer binding after enactment of the First Step Act, the "old policy statement provides helpful guidance" for courts applying § 3582(c)(1)(A)(i). *United States v. Beck*, No. 13-cr-186, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *see also Coleman v. United States*, No. CV 20-1769, 2020 WL 2079406, at *6 (E.D. Pa. Apr. 30, 2020) (DuBois, J.).

The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Moreover,

---

[3] Because defendant submitted a request for compassionate release with the warden of USP-Allenwood on March 23, 2020, and the request was denied on April 2, 2020, he has exhausted his administrative remedies.

"the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Therefore, a general fear of contracting COVID-19 alone does not satisfy the "extraordinary and compelling reasons" requirement of the statute. *United States v. Ramirez-Ortega*, No. CR 11-251-07, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J). However, an inmate may be able to establish extraordinary and compelling circumstances when the inmate suffers from a medical condition that the Centers for Disease Control and Prevention ("CDC") has identified as a risk factor for COVID-19. *Rodriguez*, 2020 WL 1627331, at *7.

"Not every defendant who presents a qualifying extraordinary and compelling reason is entitled to relief under Section 3582(c)(1)(A)." *United States v. Babbitt*, No. 18-cr-384, 2020 WL 6153608, at *9 (E.D. Pa. Oct. 21, 2020). Before granting compassionate release, a court must consider (1) whether the defendant would present a danger to the community under 18 U.S.C. § 3142(g); and (2) whether a sentence reduction would be consistent with the factors enumerated in 28 U.S.C. § 3553(a). *Babbitt*, 2020 WL 6153608, at *9. To determine whether a defendant would be a danger to the community, the Court considers "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Then, § 3553(a) instructs the court to "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses.

*Babbitt*, 2020 WL 6153608 at *10 (citing 18 U.S.C. § 3553(a)). Ultimately, compassionate release is appropriate only when there are extraordinary and compelling circumstances, the defendant's release would not pose a danger to the community, and release would be consistent with the § 3553(a) factors.

### IV.  DISCUSSION

#### A. Extraordinary and Compelling Reasons

Defendant argues three extraordinary and compelling circumstances warrant his release: (1) the excessive length of his mandatory life sentences compared to the circumstances of his crimes; (2) his age, time served, and declining health; and (3) his medical conditions in light of the COVID-19 pandemic. The Court considers each in turn.

Defendant first contends that the excessive nature of his sentence constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)(i). Counseled Reply, 2. At the time of his sentencing, 21 U.S.C. § 841(b)(1)(A) mandated life sentences on Counts Two and Four because defendant had two prior drug trafficking convictions. If defendant had not had any prior convictions, he would have faced a mandatory minimum sentence of ten years; if he had one prior conviction, he would have faced a mandatory minimum sentence of twenty years. 21 U.S.C. § 841(b)(1)(A) (2012). Additionally, at the time defendant was sentenced, the Sentencing Guideline imprisonment range was 210 to 262 months. Counseled Mot., 12 (citing Presentence Report ¶ 94). However, because defendant had the two prior drug trafficking convictions, the Court had no discretion and was required to impose the life sentences.

In 2018, Congress recognized the undue harshness of this sentence and passed the First Step Act, which amended § 841(b)(1)(A) to reduce the mandatory minimum sentence to twenty-five years' imprisonment.[4]  Pub. L. No. 115-391, 132 Stat. 5194 § 401(a)(2)(A)(ii) (2018). Given that defendant has already served almost twenty-seven years in prison, he likely would have already been released if he was sentenced under the amended § 841(b)(1)(A) or if § 841(b)(1)(A) did not have a mandatory minimum sentence.  The Court also notes that FBI Agent Withers, who stole the involved drugs from the FBI evidence locker and sold them to defendant, was sentenced to only twenty-five years' imprisonment for his involvement and was released in 2017.  Gov't's Resp., 2; Order, *United States v. Withers*, No. 94-cr-343 (E.D Pa. March 2, 2017) (Document No. 69).  *See United States v. Price*, No. CR 07-0152-06, 2020 WL 5909789, at *7 (D.D.C. Oct. 6, 2020) (identifying as an extraordinary and compelling reason the fact that two of defendant's co-defendants had already been released).

The Court thus concludes that defendant's mandatory life sentences are excessive for his crimes.  *See United States v. McGee*, No. 20-5047, 2021 WL 1168980, at *10 (10th Cir. Mar. 29, 2021) (concluding that "the fact that a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A)" can, in conjunction with other factors, present extraordinary and compelling circumstances); *United States v. Briggs*, No. 06-cr-715, 2021 WL 872761, at *4-5 (E.D. Pa. Mar. 8, 2021) (DuBois, J.) (granting defendant's Motion for Compassionate release after concluding defendant's mandatory thirty-two-year sentence was "harsh" and noting that the First Step Act reduced the mandatory minimum for defendant's crimes of conviction to fourteen years, though the change was not made retroactive); *United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (identifying "the injustice of [a] lengthy

---

[4] The sentencing change was not made retroactive to sentences, like defendant's, that were imposed before the enactment of the First Step Act.  Pub. L. No. 115-391, 132 Stat. 5194 (2018).

sentence" as a factor that may weigh in favor of a sentence reduction). The Court considers whether defendant's excessive sentence, in combination with defendant's other arguments, presents extraordinary and compelling reasons justifying release.

Defendant next argues that his age, time served, and declining health present extraordinary and compelling circumstances that warrant compassionate release. Counseled Reply, 2. In support of this argument, defendant cites the policy statement in § 1B1.13 of the United States Sentencing Guidelines. The Court notes that the § 1B1.13 policy statement is no longer binding after enactment of the First Step Act. However, because the policy statement addresses circumstances involving a defendant's deteriorating health, it provides helpful guidance to defendant's Motion.

The application notes to the policy statement provide that extraordinary and compelling reasons exist, *inter alia*, when:

> (A)(ii) The Defendant is . . .
>    (III) experiencing deteriorating physical or mental health
>       because of the aging process,
> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.
>
> (B) The defendant (i) is at least 65 years old; (ii) is experiencing a
> serious deterioration in physical or mental health because of the
> aging process; and (iii) has served at least 10 years or 75 percent of
> his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt. n.1.

In response, the Government argues defendant's medical conditions are "relatively ordinary for many men of his age, and do not inhibit his ability to live in the general population of the penitentiary." Gov't's Resp., 17. The Court agrees with the defendant on this issue.

Defendant, who is seventy years old and has served nearly twenty-seven years in prison, presents a litany of age-related medical conditions, including several that affect eyesight and

mobility. As a result of his knee placement surgery, arthritis, lower back pain, and kyphosis, the BOP has issued him a cane, walker, and shower chair, and he is identified as a "fall risk." Med. Rec., 13. Further, the BOP issued an order designating defendant to the lower bunk in his cell. Although some of defendant's conditions are currently stable as a result of the eleven medications he is prescribed, he reports being in "7/10" pain. Med. Rec. 5-7. Further, he is not expected to recover from these conditions, and, in fact, he is monitored for possible worsening of some of them, such as his prediabetes.

Defendant is thus "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes [his ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii), and "is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years . . . [of his] term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.1(B). Although this policy statement is not binding, its definition of "extraordinary and compelling" circumstances supports this Court's conclusion that defendant's declining health, in light of his advanced age and the nearly twenty-seven years he has served on his sentence, warrants granting defendant's Motion for Compassionate Release.

Defendant's third argument is that compassionate release is warranted because his aforementioned health conditions put him at an increased risk of suffering severe consequences if he were to contract COVID-19. In response, the Government argues that (1) the CDC recognizes only one of defendant's medical conditions as a COVID-19 risk factor, which is not sufficient to warrant release, (2) defendant's medical conditions are "appropriately managed,"

9

and (3) defendant has received the first dose of the Moderna COVID-19 vaccine. Gov't's Resp., 14-17; Gov't's Second Supp., 2. The Court agrees with defendant on this issue.

As the Court noted, *supra*, defendant suffers from numerous medical conditions and deteriorating health. The CDC recognizes a history of smoking as a risk factor and reports that hypertension and a BMI over 25 might increase a person's risk of suffering severe illness from COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed March 24, 2021). Although the CDC does not report conclusive evidence that any other of defendant's medical conditions, taken individually, increase his risk of severe illness, the CDC reports that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id*. Further, adults ages 65 through 74 are 35 times more likely to be hospitalized by COVID-19 and 1100 times more likely to die from COVID-19, as compared to the control group of children ages 5 to 17. Centers for Disease Control and Prevention, *Older Adults* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (accessed March 24, 2021). Undoubtedly, defendant's litany of medical conditions, paired with his advanced age and physical limitations, would present a serious risk of severe illness and interfere with defendant's ability to provide self-care if he were to contract COVID-19 in the prison setting.

Although the Government states that defendant's medical conditions are "appropriately managed" at present, the Court recognizes the complexity of defendant's health conditions and the significant potential for them to suddenly and dramatically worsen, were he to contract COVID-19. Gov't's Resp., 17. The Government also states that defendant received the first

dose of the Moderna vaccine on February 25, 2021.  However, the Court notes that the vaccine is not yet fully effective for defendant, meaning he remains vulnerable to COVID-19.  Centers for Disease Control and Prevention, *When You've Been Fully Vaccinated*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (accessed March 24, 2021) ("People are considered fully vaccinated . . . 2 weeks after their second dose in a 2-dose series, such as the Pfizer or Moderna vaccines.").  Additionally, the Court emphasizes that the COVID-19 pandemic is an exacerbating factor that supports defendant's compassionate release, in light of his mandatory life sentence, the fact that he has served nearly twenty-seven years' imprisonment, and his age-related deteriorating health.

The Court thus concludes that, taken together, (1) defendant's excessive sentence of life imprisonment; (2) defendant's age, time served, and declining health; and (3) the increased risks to defendant's health due to the COVID-19 pandemic present extraordinary and compelling circumstances warranting compassionate release in this case.

### B.  Danger to the Community Under 18 U.S.C. § 3142(g)

Defendant argues that his rehabilitative efforts, disciplinary history while in prison, and current health status demonstrate that he would not pose a danger to the community under 18 U.S.C. § 3142(g) upon his release.  Counseled Mot., 12-13.  In response, the Government argues defendant "simply cannot be trusted to abide by the law," Gov't's Resp., 17, because his "history of disdain for authority and abusive litigation."  Second Supp. 5.  The Court agrees with defendant on this issue.

Defendant's history of drug trafficking is almost three decades behind him, and he has shown a commitment to rehabilitate himself.  While incarcerated, defendant has taken advantage of the treatment and educational opportunities offered by the Bureau of Prisons, including

"numerous courses." Counseled Mot., 12. These efforts are demonstrative of defendant's self-reflection and commitment to bettering himself, given that defendant is serving life sentences and was not expected to reintegrate into society. Further, defendant has not received a disciplinary infraction in over seven years, and the majority of the few infractions that he did incur were minor. This signifies that defendant is able to learn to conform his behavior to that which is expected of him. *See United States v. Trader*, No. 04-cr-680-06, 2021 WL 632679, at *4-5 (E.D. Pa. Feb. 18, 2021) (DuBois, J.) (finding defendant was not a danger to the community in part because he had received only six disciplinary infractions in over sixteen years and none in the past ten years). Defendant also has the support of his family, who submitted numerous letters of support on his behalf. Counseled Mot., 13; *see also* Document No. 588. He states that, upon his release, he will live with his son, and he has an offer of employment at a property management company, should he be able to work given his physical condition. Counseled Mot., 13.

The Court also notes that, as detailed *supra*, defendant is a seventy-year-old man with a history of knee replacement surgery, kyphosis, arthritis, and spinal stenosis who relies on a walker and suffers from hypertensive retinopathy. Defendant's limited mobility and eyesight mitigate any danger he might otherwise pose.

The Court thus concludes that defendant would not pose a danger to the community under § 3142(g) upon his release.

### C. § 3553(a) Factors

Defendant argues that the § 3553(a) factors support his release because his nearly twenty-seven years of incarceration have accomplished the sentencing goals of § 3553(a), especially given the First Step Act's reduction of the mandatory minimum sentence he received under

12

§ 841(b)(1)(A).  Counseled Mot., 12-13.  The Government argues "reduction of his sentence would not promote respect for the law or assure deterrence of further illegal conduct by the defendant."  Gov't's Resp., 17.  The Court agrees with defendant on this issue.

As discussed *supra*, defendant has demonstrated significant rehabilitation.  Although his crimes were serious, he has shown a commitment to bettering himself while incarcerated.  Additionally, the harshness of his life sentences outweighs the seriousness of the crimes of conviction as is evidenced by the fact that Congress has eliminated the mandatory life sentence under § 841(b)(1)(A) for defendants with two prior drug trafficking convictions.  *United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (granting compassionate release based, in part, on the fact that defendant's sentence was "longer than Congress now deems warranted").  The Court thus concludes that defendant's continued incarceration is not necessary to promote respect for the law or deter further criminal conduct.  Further, FBI Agent Withers, who stole the drugs that defendant sold, received a lesser sentence of twenty-five years' imprisonment and has already been released from prison.  *See United States v. Ezell*, No. 02-cr-815-01, 2021 WL 510293, at *8 (E.D Pa. Feb. 11, 2021) (concluding the § 3553(a) factors supported release when defendant had already served a longer sentence than his two co-defendants, who were released from custody).

For all of the foregoing reasons, the Court determines that the § 3553(a) factors counsel in favor of release in this case.  A reduction to time served is appropriate on the ground that defendant's time in custody has accomplished all of the goals of sentencing.  His continued incarceration would serve no meaningful purpose.

V.     CONCLUSION

For the foregoing reasons, defendant's Motion for Compassionate Release is granted. Defendant's sentence is reduced to time served, approximately twenty-seven years. An appropriate order follows.